United States District Court
Southern District of Texas
**ENTERED**
July 06, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAFFANY A JONES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-03564 |
| | § | |
| ROOMS TO GO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Plaintiff Taffany Jones is a former commissioned sales agent for furniture store Rooms to Go ("RTG"). She has brought a Title VII suit against RTG, as well as four former coworkers and three former supervisors at RTG. The Court previously granted Defendants' 12(b)(6) Motions to Dismiss, and allowed Plaintiff leave to file an amended complaint. Plaintiff instead filed a supplement to her complaint. Before the Court is Defendants' Second Motion to Dismiss.

### I.     Plaintiff's Allegations

In her underlying complaint,[1] Plaintiff alleges that Defendants "intentionally discriminated against [her] because of her race, color, religion, sex, and age, in violation of Title VII[.]" (Doc. No. 1, ¶ 26).[2] Specifically, she alleges that she was:

> discriminated against because she is a single white straight Christian female working in an environment populated by [two] younger black lesbian females, a younger white female, and a younger Hispanic female, all of whom were excused

---

[1] Plaintiff filed her original complaint in September 2019 (Doc. No. 1). She then filed a first supplement to that complaint, to add supervisor Gerry Raymond as a defendant. (Doc. No. 2). After the Court granted Defendants' initial 12(b)(6) motions to dismiss, Plaintiff filed a second supplement (Doc. No. 32). To each pleading, Plaintiff has attached an "Exhibit A," which contains her factual allegations. The exhibit's contents have changed only modestly with each iteration.

[2] Title VII does not cover discrimination based on age. Plaintiff has never pleaded an ADEA claim. At the hearing on Defendants' Second Motion to Dismiss, Plaintiff was unopposed to the dismissal with prejudice of all age-based discrimination and hostile work environment claims.

1

>from conduct, and violations of the Employee Handbook while Plaintiff was disciplined, disregarded, belittled, verbally and physically abused, and ultimately fired under the pretext of Plaintiff refusing a transfer from an upscale, financially vibrant location (Rooms to Go, Kingwood) to a depressed financial outlet, (Rooms to Go, Willowbrook) where her income would be reduced by approximately 50%.

(*Id.*, ¶ 30). Plaintiff alleges that her transfer was retaliation for her multiple complaints to management. (Doc. No. 2, at 20). Plaintiff also alleges that Defendants "created a hostile work environment through the discriminatory words and actions towards Plaintiff because of Plaintiff's race, color, religion, sex, and age." (Doc. No. 1, ¶ 31).

The complaint contains little more by way of factual pleadings. The bulk of Plaintiff's factual pleadings are instead contained in a sixteen page "Exhibit A," which Plaintiff describes as a "summary of dates, events, persons and policies violated in the continuing course of harassment and retaliation experienced by Plaintiff." (Doc. No. 2, ¶ 10). The majority of alleged incidents concern comments and behavior directed at Plaintiff by the four female coworkers identified in paragraph thirty of her complaint. Many of those alleged incidents, while reflecting animus toward Plaintiff, do not directly display discriminatory animus. Some concern instances in which the four coworkers allegedly stole Plaintiff's customers or falsely accused Plaintiff of stealing their customers. (Doc. No. 32-1, Exhibit A, ¶¶ 1, 2, 5, 9, 12). Others concern alleged instances in which Plaintiff was generally bullied or ostracized by her coworkers (¶¶ 1, 10, 14, 25), such as when one coworker allegedly taunted Plaintiff by saying "What is wrong with you, why don't you answer me? Awh, she's scared 'cause she doesn't have someone here to protect her this time." (¶ 48). As discussed *infra*, however, a couple of alleged coworker comments and actions do exhibit explicit religious or racial content. (*See, e.g.,* ¶¶ 6, 8, 12, 51). Plaintiff also alleges two physical encounters with one coworker. In one encounter, the coworker allegedly bumped into Plaintiff on purpose and, in the other, the coworker allegedly lunged at Plaintiff from across a table in order to throw

her hands in Plaintiff's face. (¶ 11, 21).

Plaintiff also alleges that the supervising employee store manager, Rhonda Haun, did little to curb the abusive behavior of Plaintiff's coworkers, despite Plaintiff's repeated complaints about their behavior, including complaints of religious and racial discrimination. (*See, e.g.,* ¶¶ 3, 13, 52). Plaintiff also alleges that Haun enforced RTG policies related to late arrivals at work, time off, and break time duration more strictly against Plaintiff than against her coworkers. (¶¶ 23, 41, 56). Plaintiff further describes an alleged incident in which the supervising assistant store manager, Greg Sheffie, out of the blue, verbally berated Plaintiff and shoved his palm in her face, shouting repeatedly "What is wrong with you?" and "You will be written up." (¶ 19). Plaintiff claims her attempt to report the incident was stymied, and that the next day she indeed received a write up, to which she noted her disagreement. (*Id.*). After that, Sheffie allegedly treated Plaintiff with hostility, indifference, and avoidance on a daily basis. (¶¶ 20, 24).

Regarding her termination, Plaintiff alleges the following. In February 2019, after an upsetting incident during which one coworker became aggressively angry after Plaintiff sold a bed she had planned to sell, Haun suggested Plaintiff could go work at the RTG Willowbrook location so Plaintiff "wouldn't be under so much stress at this location." (¶ 50). Plaintiff responded, "There's no way I'd let anyone force me to leave my job because of their very bad behavior[.]" (¶ 50). Later that month, on February 27th, Plaintiff overheard one coworker and another non-defendant warehouse worker discussing putting a "contract or hit" on Plaintiff. (¶ 60). Plaintiff alerted Haun about the incident before her shift the next day. (¶ 61). Haun responded by telling Plaintiff she would be transferred to the Willowbrook RTG location starting that Saturday, per the instructions of the regional supervisor, Gerry Raymond. (¶ 62). Plaintiff responded that she would not accept the transfer because it would be retaliatory and a demotion that would cause her

hardship, and said she would instead await notice of when it was safe to return to the Kingwood location. (¶ 62). Plaintiff tried to call Human Resources but no one answered and she could not leave a message. (¶ 64). She also reported the threat to the police. (¶ 65). On Saturday March 2nd, when Plaintiff was scheduled to start work at the Willowbrook store, Plaintiff called Haun to tell her again that she would not accept the transfer. (¶ 66). Haun instructed her to call the Willowbrook store. (¶ 66). Plaintiff then called the Willowbrook store to inform them she would not be transferring because she saw her transfer as retaliation, demotion, and a hardship. (¶ 66). On March 6th, Plaintiff tried calling Human Resources again, and was informed she had been terminated two days earlier on March 4th, after three days of not showing up for work at the Willowbrook store. (¶ 69). Human Resources told Plaintiff she had been transferred because it "was not feasible" to move all employees at the Kingwood store that Plaintiff "was having issues with." (¶ 69).

## II. Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint for failing to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). A plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the Title VII context, "a plaintiff need not make out a prima facie case of discrimination under *McDonnell Douglas* in order to survive a Rule 12(b)(6) motion to dismiss[.]" *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*,

4

714 F.3d 322, 331 (5th Cir. 2013)). But a plaintiff must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make their case plausible." *Id.* (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). For example, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Id.* at 767. To survive a motion to dismiss, plaintiff must allege sufficient facts to "nudge [her] claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 547).

### III. The Motion to Dismiss

The Court construes Plaintiff's complaint, as supplemented, as raising Title VII claims for disparate impact, disparate treatment, retaliation, and hostile work environment, against both RTG and the individual employee and supervisor defendants. Defendants move for dismissal of all claims. The Court has determined that the motion to dismiss must be granted in part.

#### A. Individual Defendants

Plaintiff brings Title VII claims against RTG, as well as against individual RTG employees and supervisors. The individual defendants argue that Plaintiff's Title VII claims against them must be dismissed because Title VII does not permit individual liability.

Title VII imposes liability only on "employers" who violate its provisions. *Harvey v. Blake*, 913 F.2d 226, 227–228 (5th Cir. 1990). Title VII defines "employer" to mean "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). "[T]he purpose of the 'agent' provision in § 2000e(b) was to incorporate *respondeat superior* liability into title VII." *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994). "Thus, a Title VII suit against an employee is actually a suit against the corporation." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). Accordingly,

5

"Plaintiff is not entitled to maintain an action against both a corporation and its agent in an official capacity in a Title VII action because effectively the corporation could be held liable twice for the same act." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff has sued both RTG and individual employees. The Title VII claims against the individual defendants are therefore not cognizable. In fact, Plaintiff's counsel acknowledged at a prior hearing that "the claims against employees were not cognizable under Title VII." (Doc. 24-1, at 4). At the most recent hearing, the Court inquired whether the individual defendants may therefore be dismissed with prejudice. Plaintiff answered that they may not because those defendants can still be held liable for state law violations. However, the Court cannot discern any state law causes of action in either Plaintiff's original complaint, or Plaintiff's two subsequent supplements to that complaint. Plaintiff has had ample opportunity to plead state law causes of action against the individual defendants in this matter, but has not done so. Accordingly, all claims against the individual defendants in this matter are dismissed with prejudice.

### B. Disparate Impact Claim

Plaintiff's complaint contains certain language suggesting Plaintiff aims to bring a Title VII disparate impact claim. For instance, Plaintiff alleges that RTG "used the policies and procedures of the Employee Handbook in a manner that resulted in a disparate impact on Plaintiff, in violation of Title VII." (Doc. 1, ¶ 27). Both counsel for RTG and the Court have urged that, because Plaintiff is focused on how RTG policies were allegedly enforced differently against her, a disparate treatment claim is more fitting. Given that Plaintiff recently filed a supplement to her complaint, rather than an amended complaint as directed by the Court, it remains unclear whether Plaintiff still seeks to maintain a disparate impact claim. To the extent she does, Plaintiff has failed to allege how RTG's policies themselves had a disparate impact on her in particular, or white

Christian women in general. Any disparate impact claim is dismissed with prejudice.

### C. Disparate Treatment Claim

Plaintiff alleges that RTG intentionally discriminated against her because of her race, religion, or sex. RTG moves to dismiss these disparate treatment claims. To survive the motion to dismiss, the pleadings must state "(1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese*, 924 F.3d at 766. Plaintiff has pleaded that her transfer constituted an adverse employment action. RTG does not challenge that aspect of her pleading. Instead, RTG argues that Plaintiff has failed to allege sufficient facts to state a plausible claim that she was transferred because of her race, religion, or sex. (Doc. 33, at 19).

The ultimate question in a Title VII disparate treatment claim is whether an employer took an adverse employment action against a plaintiff because of her protected status. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Plaintiff must thus plead at least some facts, either direct or circumstantial, that suggest her employer's actions were based on her race, religion, or sex, or that her employer treated similarly situated employees of other religions, races, or sexes more favorably. *Id.* Plaintiff has alleged that she was transferred after she reported overhearing a threat against her, and then ultimately terminated when she did not appear for work at the store to which she was transferred. There is no suggestion that Plaintiff's religion, race, or sex played a role in the transfer or termination decisions, which were conducted at the direction of Regional Supervisor Gerry Raymond. Plaintiff has alleged no facts, either direct or circumstantial, suggesting Raymond acted on discriminatory animus. Nor does Plaintiff plead that RTG treated similarly situated employees differently. Plaintiff does mention another incident in 2018 in which RTG allegedly reacted to a threat of physical harm made by one employee against another by immediately firing the employee who made the threat. But Plaintiff does not plead facts suggesting

that the threatened employee was similarly situated to Plaintiff. Thus, the Court concludes that Plaintiff has failed to plead that she was transferred or terminated because of her race, religion, or sex. Because Plaintiff was previously afforded an opportunity to amend her complaint to remedy this deficit, and because Plaintiff has already twice supplemented her complaint, the Court exercises its discretion to dismiss Plaintiff's Title VII disparate treatment claims with prejudice. *See Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir.1985) (citations omitted) (naming the repeated failure to cure deficiencies by prior amendment as an acceptable justification for denying leave to amend).

### D. Retaliation Claim

To state a retaliation claim, a plaintiff must allege facts that tend to establish that: "(1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action." *Richards v. JRK Prop. Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010). Though a plaintiff is not required to plead a prima facie case of retaliation, she must "plead sufficient facts on all of the ultimate elements" of a retaliation claim to make her case plausible. *Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (quoting *Chhim*, 836 F.3d at 470).

Plaintiff has alleged that she made complaints of religion- and race-based discrimination to management, that she was transferred to an underperforming store despite her protestations that the transfer was "retaliation, hardship, and a demotion," and that the regional manager initiated Plaintiff's transfer a week after visiting the Kingwood store to address complaints, including those from Plaintiff, about the hostile climate at the store. (Exhibit A, ¶¶ 55, 62, 66). These allegations suffice to state a Title VII retaliation claim.

8

### E. Hostile Work Environment Claim

To establish a prima facia case of hostile work environment, Plaintiff will eventually have to show that she was subject to harassment based on a protected characteristic, that the harassment was sufficiently severe as to alter the conditions of her employment, and that there exists some basis for liability on the part of her employer. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). Plaintiff need not, however, plead a prima facie case to survive a motion to dismiss. *See Cicalese*, 924 F.3d at 767 (quoting *Chhim*, 836 F.3d at 470). She need only plead facts that raise her hostile work environment claim "above the speculative level." *Raj*, 714 F.3d at 331 (quoting *Bass v. Stryker Corp*, 66 F.3d 501 (5th Cir. 2012). To do so, Plaintiff must at least plead some connection between the alleged harassment and her race, religion, or sex. *Id.*

Plaintiff has alleged two incidents suggesting a connection between the alleged harassment and her religion. One incident, occurring on March 18, 2018, allegedly involved one of Plaintiff's coworkers following her into the bathroom, shaking the walls of Plaintiff's stall, and yelling that someone "put a God damn track for Jehovah Witnesses in here!", until another coworker entered the bathroom pretending to be an old lady saying "excuse me ma'am, would you like to talk to me about Jesus, our Lord and Savior?", at which point both coworkers laughed. (Exhibit A, ¶ 8). Plaintiff also alleges that, on the same day, her coworkers "immediately and deliberately" began shouting "God Damn" as soon as she entered the breakroom, and stopped when she exited. (¶ 6).

Defendants argue that Plaintiff's religion-based harassment claims are time-barred because the incidents occurred more than 300 days before Plaintiff filed her EEOC complaint, and because she has alleged no other incident of religion-based discrimination occurring within the statutory period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-21 (2002) (explaining that, in order for a charge to be timely under the continuing violation doctrine, at least one of the acts

on which the hostile work environment claim depends must have occurred within 300 days of the charge). Plaintiff has pleaded, however, that the religion-based harassment was continuous in nature. Plaintiff has pleaded sufficient facts to entitle her to offer evidence to support that claim.

Plaintiff has also pleaded a couple of instances suggesting a connection between the harassment and Plaintiff's race. The clearest instance involves a coworker allegedly telling everyone in the breakroom the lie that Plaintiff was in the KKK. (Exhibit A, ¶ 13). Other alleged incidents, though less clear, seem to have involved coworkers intentionally and specifically interfering with Plaintiff's interactions with customers of color. (¶¶ 15, 52). At the pleading stage, the Court finds that these allegations suffice to state a claim for race-based harassment.

The same is not true, however, for Plaintiff's claim of sex-based harassment. Plaintiff has not flagged any of her factual pleadings as instances of sex-based harassment, and the Court discerns none that could qualify. Plaintiff was previously alerted to this deficit in her pleadings, but failed to correct it in her most recent supplement. Plaintiff's claims of sex-based discrimination are therefore dismissed with prejudice. Moreover, because Title VII does not cover age-based discrimination, because Plaintiff has not pleaded facts suggesting age-based harassment, and because Plaintiff is unopposed to the dismissal of her age-based claims, Plaintiff's age-based harassment claims are also dismissed with prejudice.

### F. Punitive Damages

As a final matter, the Court notes that Plaintiff prays for $500,000.00 in punitive damages against RTG. (Doc. No. 1, ¶¶ 36, 38; Doc. No. 2, ¶¶ 26, 28). Compensatory and punitive damages are capped at $300,000 in this case. 42 U.S.C. § 1981a(b)(3). Plaintiff may not request more.

### IV. Conclusion

Defendants' Motion to Dismiss (Doc. No. 33) is GRANTED IN PART and DENIED IN

PART. Plaintiff's claims against all individual defendants are dismissed, as are Plaintiff's Title VII disparate impact and disparate treatment claims. Plaintiff has pleaded sufficient factual allegations to state Title VII claims for retaliation and hostile work environment. However, regarding her hostile work environment claim, Plaintiff has plausibly pleaded only religion- and race-based harassment; her claims for sex- and age-based harassment are also dismissed. All dismissals are with prejudice.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 6th day of July, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE